**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SCHINDLER ELEVATOR CORPORATION d/b/a
MILLAR ELEVATOR SERVICE COMPANY,

      Plaintiff,

v.                                     Case No. 03-CV-72406-DT

CHELSEA MILLING COMPANY,

      Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S "MOTION FOR RECONSIDERATION AND/OR CLARIFICATION OF THE DISTRICT COURT'S ORDER DATED MARCH 30, 2005"**

On December 12, 2003, the court referred to United States Magistrate Judge Donald A. Scheer all pre-trail proceedings in the above-captioned case, including three summary judgment motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). These motions were: (1) Plaintiff/Counter Defendant Schindler Elevator Corporation's ("Schindler's") August 30, 2004 "Motion for Summary Judgment;" (2) Defendant/ Counter Plaintiff Chelsea Milling Company's ("Chelsea's") August 31, 2004 "Motion for Summary Judgment;" and (3) Defendant Chelsea's "Motion for Summary Judgment on its Counter-Complaint Pursuant to FRCP 56(a)."

The magistrate judge issued his "Report and Recommendation" on February 3, 2004, advising that all three motions for summary judgment should be denied. (02/03/05 R&R at 1.) Defendant Chelsea filed objections to the report and recommendation on February 11, 2004. Plaintiff neither filed its own objections nor a response to Defendant's objections as required. (*Id.* at 25 ("Not later than ten days after

service [of] an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.").)

On March 30, 2005, the court issued its order adopting in part and rejecting in part the magistrate judge's report and recommendation.  (03/30/05 Order.)  In the order, the court denied Plaintiff's motion for summary judgement, denied Defendant's motion for summary judgement on its counter-complaint, but granted Defendant's motion for summary judgment based on the unopposed objections and the record evidence presented.  (*Id.*)

Plaintiff now moves the court to reconsider its determination to grant Defendant's motion for summary judgment, to grant Plaintiff an opportunity to respond to Defendant's objections, and to present evidence of Defendant's negligence to support its claims.  For the reasons set forth below, the court will grant Plaintiff an opportunity to address the issue of Defendant's alleged comparative negligence.

**I.  BACKGROUND**

On or about September 5, 1997, Plaintiff and Defendant entered into a service contract that required Plaintiff to perform regularly scheduled inspections of several "manlift" elevators used by Defendant at its food processing plant.  The contract called for inspection, as well as lubrication and minor adjustments to the equipment used to transport Defendant's employees to and from the several levels of the mill.  More comprehensive service and repairs were not covered by this 1997 agreement and were to be arranged by the parties through separate work orders and at regular billing rates.

Under the 1997 agreement providing for inspections, Defendant was obligated to notify Plaintiff promptly of trouble with the "manlifts" or associated equipment.

Defendant was required to immediately discontinue the equipment from service when the equipment operated in a manner that may cause injury to the user thereof or become unsafe.  (Pl.'s Mot. Ex. A.)  The 1997 agreement also contained a indemnification clause that states:

> You agreed to be solely responsible for, and hereby release [Plaintiff] from, all damages, claims, liabilities, actions and causes of action, of whatsoever kind and nature, arising out of the condition, maintenance or operation of the equipment, and to defend, indemnify and hold harmless [Plaintiff] from any and all damages as set forth above, including reasonable attorneys' fees, <u>regardless of the cause of said damages and regardless of any negligence on the part of [Plaintiff]</u>.  The indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for your [Plaintiff] under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

(*Id.*, Ex. A at 5.)

Following an accident in 1999, Chelsea contacted an elevator consultant about a chain coupler that was being used in one of its manlifts.  Generally speaking, the coupler connects the manlift's motor to a shaft that drives a drum which in turn drives a belt that moves the elevator.  (*See* Pl.'s Answer to Defendant's Motion for Summary Judgment on its Counter-Claim at Ex. Q (Ex. Q includes four pictures of the equipment after the replacement coupler failed).)  The consultant recommended replacing the chain coupler.  The "replacement coupler" at issue in this case was installed by Plaintiff's technician under contract terms that remain in dispute.  (*See* R&R at 4-5.)  Although Plaintiff installed the new coupler, the part was manufactured by Flender Corporation and sold to Plaintiff by Humphrey Manlift Company.

Installation of the replacement coupler was completed in February 2000.  On May 4, 2000, one of Defendant's employees, Gene Borders, was injured when the

recently installed coupler failed, causing the manlift at the mill to freewheel.  Borders fell three levels, suffering severe spinal damage and paraplegia.  Mr. Borders was awarded workers compensation benefits of which Defendant paid a portion under its insurance contract with its workers compensation insurance provider.

The accident was reported to the Michigan Department of Consumer and Industry Services, Bureau of Construction Codes, Elevator Division.  Afterward, the DCIS assigned Mr. Paul A. Singer to investigate the incident.  Mr. Singer's investigation was conveyed in a written report, where he concluded that there "was reason to believe that loose setscrews in the bearings for the upper pulley head shaft permitted the shaft to move."  (R&R at 6.)  This movement in the head shaft permitted the two halves of the coupling to disengage, causing the uncontrolled descent of the manlift.  His findings also show that none of the setscrews in the bearings were tightened on the shaft, but that there were dimples in the shaft showing where they had once been tightened.  (*See* Slinger Dep. at 41-42.)

Borders and his wife filed a civil negligence action in state court against Plaintiff and two other companies.  In this action, Borders named as defendants: Plaintiff (the installer of the coupling); Humphrey Manlift Company (the seller); and Flender Corporation (the manufacturer).  Flender and Humphrey were granted summary judgment, and Plaintiff settled the state law civil action in January 2003 for $4,500,000.00.  The cause of action against Plaintiff was not based solely on a products liability theory and the trial court rejected attempts to apply Michigan's statutory damage limits in product liability cases.  Instead, Borders alleged negligence by Plaintiff's employees for failing to secure the setscrews to the drive shaft, in their use of the

4

existing shaft, their failure to examine and tighten the setscrews during the monthly inspections, and in their failure to examine and tighten the screws after inspecting the equipment approximately fifteen minutes prior to the accident.  (*See* R&R at 9; Pl.'s Mot. for Summary Judgment Ex. E.)

Plaintiff argues that Borders's claims in the state law negligence action were based entirely on the parties' 1997 agreement and that Defendant must indemnify Plaintiff under that agreement's indemnification clause.  Plaintiff claims that the 1997 service contract controls the rights of the parties as a matter of law, that it is entitled to indemnification from Defendant for a portion of the $4.5 million settlement with Borders based on an assessment of relative fault under a comparative negligence framework, and that a December 15, 1999 Purchase order for the installation of the replacement coupler is irrelevant to the parties' claims.  (R&R at 10.)

The magistrate judge recommended denying Plaintiff's motion.  In his analysis, the magistrate judge observed that "[i]t is undisputed that Mr. Borders'[s] May 4, 2000 accident and injury resulted from the separation of the two piece Flender coupling installed by [Plaintiff's] mechanic, Wilcox, in February 2000."  (*Id.* at 10.)  The magistrate judge found Plaintiff's argument that the 1997 agreement applied to the exclusion of all other contractual terms to be without merit because the underlying state claims were based on Plaintiff's negligent installation <u>and</u> negligent inspection.  (*Id.* at 11.)  The magistrate judge further noted that the negligence claims settled by Plaintiff "were based on the defendant's failure to tighten the setscrews <u>both</u> at the time of the installation <u>and</u> during the subsequent inspection through and including the date of the accident."  He concluded:

> There is a genuine issue of fact as to whether the proper tightening of the setscrews in the pillow block bearings that the time the Flender coupler was installed would have prevented the May 4, 2000 accident, even though subsequent inspections were negligently performed. Because the installation of the Flender coupler was performed pursuant to the December 15, 1999 contract, and not the service contract of September 5, 1997, that portion of Schindler's Motion for Summary Judgment which seeks a finding that the September 5, 1997 service contract <u>alone</u> is applicable to the settlement in the Borders'[s] state court lawsuit must be denied.

(*Id.* at 12-13.)

The magistrate judge also concluded that the indemnification clause in the 1997 agreement, was not invalid under Mich. Comp. Laws § 691.991. "Under a Michigan Statute applicable to this case, an agreement purporting to indemnify a promisee against liability for damages arising out of personal injury or property damage caused by the sole negligence of the indemnitee is void and unenforceable as a matter of public policy. MCLA 691.992. Case law has held, however, that a provision which seeks to indemnify a promisee against liability for its own negligence is valid in the case of concurrent negligence by the promisee and another. Harbenski v. Upper Peninsula Power Co., 118 Mich. App. 440 (1982)." (*Id.* at 13.)

The magistrate judge examined Plaintiff's evidence in support of its claim that Defendant was also negligent in failing to prevent the May 4, 2000 manlift accident, concluding that such evidence, when viewed in a light most favorable to the non-moving party, was not "sufficiently strong to warrant a finding of negligence as a matter of law." (*Id.*) The magistrate judge, therefore, recommended denying Plaintiff's motion for summary judgment.

Likewise, the magistrate judge recommended denying Defendant's motion for summary judgment on Plaintiff's claims for indemnification. Defendant argues that the

6

contract surrounding the installation of the replacement coupler in January 2000 controls this dispute, not the 1997 service/inspection contract. Defendant claims that the settled state negligence claims were based on Plaintiff's negligent installation and *not* on negligent inspection. As noted above, the magistrate judge found the underlying state claims to be based on *both* negligent inspection and installation, creating a triable issue for the jury.

Plaintiff's current motion for reconsideration asks that the court reconsider its ruling based on Defendant's objection that Plaintiff failed to present evidence sufficient to create an issue of fact on its claims for indemnification under the terms of a 1997 agreement. As explained in this court's March 30, 2005 order, Plaintiff's claims against Defendant for indemnification under the terms of the 1997 service agreement survive only if the indemnification provision meets the statutory requirements of Mich. Comp. Laws § 691.991 and there is a material issue of fact as on Defendant's alleged negligence. (*See* 03/30/05 Order at 11-21.) Plaintiff argues that the issue of Defendant's negligence was not properly before the court and that because it never received Defendant's objections it was denied an opportunity to present evidence in support of its allegations of Defendant's comparative negligence.

## II.  STANDARD

Rule 7.1(g) of the Local Rules for the Eastern District of Michigan provides that a motion for reconsideration shall be granted only if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled" and (2) show that "correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest

or plain. *Mktg. Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 262, 278 (E.D. Mich. 1997) (citing Webster's New World Dictionary 974 (3d ed. 1988)). A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted. E.D. Mich. LR 7.1(g)(3); *Czajkowski v. Tindall & Assocs., P.C.*, 967 F. Supp. 951, 952 (E.D. Mich. 1997). Under the local rules, "[a] motion for reconsideration must be filed within 10 days after entry of the judgment or order."

### III.  DISCUSSION

Plaintiff contends that the court's March 30, 2005 order granting Defendant's motion rests on a palpable defect because: (1) Plaintiff was never served with Defendant's objections to the magistrate judge's report and recommendation; and (2) Defendant failed to properly identify a lack of evidence to establish Defendant's negligence in its motion for summary judgment relating to Plaintiff's indemnification claims, essentially arguing that Defendant failed to meet is initial burden under Federal Rule of Civil Procedure 56.

### A.  Plaintiff's Failure to Receive Defendant's Objections

There is no doubt that Defendant's objection expressly identified a lack of evidence of its own negligence to support Plaintiff's action for indemnification under the 1997 agreement. For instance, Defendant's "Objection 1" is titled "Absence of Any Negligence on Behalf of Chelsea," and it states that Defendant "disagrees with the [magistrate judge's] conclusion there is a question of fact on ***any negligence*** on behalf of Chelsea. Even giving every reasonable inference to Schindler there is no evidence of negligence by Chelsea." (Def.'s 02/11/05 Objections at 2 (emphasis in original).)

Defendant also filed a sworn proof of service, indicating that the objections were served by United States Mail. (02/11/05 Proof of Service.) The address listed on the proof of service is the same address listed for Plaintiff's counsel of record. Had Plaintiff filed a response to Defendant's objections, the issues it now raises could have been addressed. The court simply cannot predict the reasons parties fail to respond to objections with proper proofs of service.

Notwithstanding this evidence of service, Plaintiff's counsel avers that such objections were never served and that somehow the court is working a violation of Plaintiff's constitutional right to due process. The reasons why Plaintiff did not receive the objections remain unexplained and could be attributable to Plaintiff, however counsel's representation as an officer of the court is sufficient for the court to conclude that Plaintiff did not have notice of the objections nor an opportunity to respond to them.[1]

### B. Issue of Defendant's Negligence

Plaintiff also maintains that Defendant did not raise the absence of evidence as to Chelsea's negligence in their motion for summary judgment and that, therefore, the issue is not properly before the court. Defendant's motion for summary judgment

---

[1] The court notes that any problem with mail delivery could have easily been avoided had Plaintiff's counsel decided to participate in the court's electronic filing system. Electronic notice of filings is but one of the significant advantages for participating attorneys. As such, all counsel in this case are directed to complete all steps necessary to file and receive pleadings, notices, and orders electronically. More information is available on the court's website at http://www.mied.uscourts.gov/ECF/default.cfm for further information. This internet protocol ("IP") address provides links to general information, information on CM/ECF eligibility, registration, and training, and links to the court's CM/ECF "Policies and Procedures" and the "Filing User's Manual" in PDF format.

requested that the court grant "its motion for summary judgment as it relates to the claims for indemnification based upon the January 1998 [i.e. the 1997] inspection contract being brought by plaintiff Schindler." (Def.'s Mot. at ¶ 15.) However, Defendant argued that the 1999 installation contract was the controlling contract between the parties and did not formally address the lack of negligence by its own employees and/or agents. On the other hand, the issue was not absent from the record. Defendant raised the lack of such evidence both in response to Plaintiff's motion for summary judgment and, most clearly, in its objections to the magistrate judge's report and recommendation.

The court must consider each of the parties cross-motions for summary judgment independently. *See Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir 2004) ("For cross-motions for summary judgment, [courts] 'must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party.'"). Under the current record, Defendant did not formally point out an absence of evidence on its own negligence in its initial brief seeking summary judgment on Plaintiff's indemnification claims.

Under Federal Rule of Civil Procedure 56, it is not necessary for the moving party to support its motion with affidavits or other similar forms of evidence; rather, the movant need only show that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party may meet his initial burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir.

10

1996).  If the moving party meets this initial burden, the non-moving party must then present admissible evidence establishing a genuine material issue of fact.  *Id.*  The non-moving party cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative [admissible] evidence in order to defeat a properly supported motion for summary judgment."  *Id.*  The party who bears the burden of proof must present evidence establishing a jury question as to each element of his claim.  *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

Notwithstanding any formal or procedural defect with Defendant's original motion for summary judgment, the court now deems that Defendant has satisfied Rule 56's initial burden to show the absence of evidence on Chelsea's negligence in its objections and its response.  Accordingly, the court will grant Plaintiff's motion to reconsider its March 30, 2005 order and Plaintiff shall be afforded an opportunity to respond by presenting to the court admissible evidence that in its view creates a triable issue of fact under the standards of Rule 56.[2]

### IV.  CONCLUSION

IT IS ORDERED that Plaintiff's "Motion for Reconsideration and/or Clarification of the District Court's Order Dated March 30, 2005" [Dkt. # ] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff file a written response presenting admissible evidence that allegedly creates a triable issue of fact on Defendant's alleged

---

[2] The court denies Plaintiff's request to omit any Rule 56 analysis on the issue of Defendant's negligence and to simply permit Plaintiff to present its evidence at trial.  If there is no evidence sufficient to create a triable issue of fact on Defendant's negligence, Plaintiff's claims would fail as a matter of law.  In the interests of economy, the court elects not to formally extend its dispositive motion deadline, permitting Defendant to file a second motion for summary judgment when the current record clearly identifies an absence of evidence on the relevant issue.

negligence no later than **May 11, 2005.**  Plaintiff should limit its brief on this specific issue to no more than ten pages and Defendant may file a written reply to Plaintiff's brief no later than **May 20, 2005.**

All scheduling order deadlines are hereby SUSPENDED and the court will issue a revised scheduling order after resolving the parties' dispute on Defendant's alleged negligence necessary to support Plaintiff's indemnification claims.

      s/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated:  April 28, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 28, 2005, by electronic and/or ordinary mail.

      s/Lisa G. Teets  
      Case Manager and Deputy Clerk  
      (313) 234-5522